KOH
PDK: USAO 2023R00180

☑ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

May 03, 2023

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___MD___ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO.   23-mj-1217-AAQ |
| | * | |
| HARRISON WILLIAM PRESCOTT FLOYD, III | * | |
| a/k/a WILLIE LEWIS FLOYD, III | * | |
| | * | UNDER SEAL |
| Defendant | * | |
| | * | |

*******

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT AND ARREST WARRANT**

Your Affiant, Dennis P. McGrail, Jr., being duly sworn, deposes and states the following:

**Introduction**

1. Your Affiant is an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7) who is empowered by law to conduct investigations and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2022. I am currently assigned to a violent crimes squad in the Rockville Residence Agency of the FBI's Baltimore Field Office, where my duties include investigating a variety of criminal violations, including gang-related violent crimes, distribution of controlled substances, domestic terrorism, and the sexual exploitation of children. Over the course of those investigations, I have conducted interviews of witnesses and subjects, participated in physical and electronic surveillance, executed search and arrest warrants, and seized mobile phones, computers, computer equipment, electronically stored information, email accounts, and social media accounts.

2.      Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a complaint and arrest warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

3.      Your Affiant respectfully submits that, based on the facts set forth herein, there is probable cause to believe that on or about February 23, 2023, **HARRISON WILLIAM PRESCOTT FLOYD, III, a/k/a WILLIE LEWIS FLOYD, III ("FLOYD")**, committed a violation of 18 U.S.C. § 111(a), Simple Assault on a Federal Officer.

### Probable Cause

4.      On or about February 23, 2023, Victim 1 and Victim 2, Special Agents with the Federal Bureau of Investigation, Washington Field Office, attempted to serve a Federal Grand Jury subpoena to **FLOYD**. The subpoena required **FLOYD** to appear before a grand jury in the District of Columbia.

5.      Prior to serving the subpoena, Victim 1 and Victim 2 became familiar with **FLOYD**'s background, including that **FLOYD** was a former United States Marine and had been a professional mixed martial artist ("MMA") fighter.

7.      Later, investigators learned that after Victim 1 and Victim 2 departed the residence of **FLOYD**'s father-in-law and mother-in-law, **FLOYD**'s mother-in-law called **FLOYD** and

2

spoke with him and texted **FLOYD** copies of Victim 1 and Victim 2's FBI business cards, such that **FLOYD** knew that the FBI agents wanted to speak with him.

8. Victim 1 and Victim 2 went from **FLOYD**'s father-in-law and mother-in-law's residence to the apartment building in Rockville, Maryland, where **FLOYD**'s father-in-law and mother-in-law indicated that **FLOYD** lived. The apartment building had a speaker call box outside of a locked exterior door that allows visitors to call residents by connecting to the resident's phone. Victim 1 and Victim 2 located **FLOYD**'s name on the speaker call box and called him.

9. **FLOYD** answered the call and Victim 2 spoke with **FLOYD**. The conversation was audio recorded. Victim 2 identified himself as a Special Agent with the FBI and requested to speak with **FLOYD**. **FLOYD** indicated he was not home and ask Victim 2 why the FBI wanted to speak with him. **FLOYD** and Victim 2 had additional conversation about the subject of the Grand Jury investigation and then the phone disconnected.

10. Victim 2 called back and continued speaking with **FLOYD**. **FLOYD** asked if the FBI had evidence of a crime, which Victim 2 stated he had a Grand Jury subpoena to serve to him. **FLOYD** continued to ask if there was evidence of a crime and Victim 2 stated, again, he had a Federal Grand Jury subpoena to serve him. After additional conversation, Victim 2 indicated he just needed to serve **FLOYD** with a subpoena. The phone then disconnected again.

11. After the call disconnected the second time, Victim 1 and Victim 2 were granted access to the apartment building by a resident. Victim 1 and Victim 2 then proceeded up several flights of stairs to the location of **FLOYD**'s apartment, where Victim 1 and Victim 2 knocked on the door. Victim 1 and Victim 2 received no response, and proceeded back outside to the call box.

12. Victim 2 then called **FLOYD** again via the call box, and **FLOYD** indicated he was not interested in talking and was really busy and was with his daughter. **FLOYD** stated that he

3

understood and appreciated Victim 2 was doing his job and would appreciate if Victim 1 and Victim 2 would stop calling his phone. Victim 1 said, "Ok we will see you soon" and the call disconnected.

13.   Victim 1 and Victim 2 decided to wait for **FLOYD** to return to serve the subpoena. Approximately 30 minutes later, Victim 1 and Victim 2 observed **FLOYD** walking towards the entrance of his apartment, while holding his daughter. Victim 1 and Victim 2 then contacted **FLOYD** again. The conversation was audio recorded. Victim 2 held the subpoena out requesting **FLOYD** to take it. Victim 1 stated, "Mr. Floyd, here is a grand jury subpoena, you have been served." Victim 2 stated, "You've been served." However, **FLOYD** did not take the subpoena or respond to Victim 1 and Victim 2.

14.   Victim 1 then took the subpoena and attempted to hand it to **FLOYD**, as **FLOYD** was opening the door to the apartment building. **FLOYD** left the door open enough for Victim 1 and Victim 2 to follow him into the stairwell. Victim 1 stated, "Sir, I'm going to walk up behind you here, and we're going to leave the subpoena right at the front door." Victim 1 and Victim 2 followed **FLOYD** up the stairwell, and Victim 2 stated, "Look, sir, this is a Federal Grand Jury subpoena, and it's requiring you to come and testify. I'm happy to go over it with you, if you have any questions." Victim 2 added, "We're really sorry to bother you." During the interaction, **FLOYD** stated, "Bro I don't even know who you are. You're two random guys who are following me up here, into my house, with my daughter. You're not showing me a fucking badge, you haven't shown me shit. Get the fuck away from me." Victim 1 responds, "Here's my credentials," and held out his FBI credentials for **FLOYD** to inspect, but **FLOYD** did not turn around and instead opened the door to his apartment then slammed it shut.

4

15. As **FLOYD** shut his door, Victim 1 threw the subpoena into the closing door frame, which stuck in the closed door. Victim 2 took a photograph of the subpoena lodged in the door frame. Victim 1 and Victim 2 then started to walk down the stairway to exit the building. Victim 2 estimated they were about halfway down the first flight of stairs, when he heard a loud noise from behind and above, followed by yelling. The interaction continued to be audio recorded.

16. Victim 1 and Victim 2 observed **FLOYD** running down the stairs after them. Victim 1 tells Victim 2, "Get ready," as **FLOYD** rushed down the stairs at them screaming, "YOU FUCKING PIECE OF SHIT!" Victim 2 yells back in response, "Back up! Back up!" But **FLOYD** continued to rush toward Victim 1 and 2 and then ran straight into Victim 1 on the stair landing, striking him chest to chest. Victim 1 was knocked backward, and **FLOYD** continued rushing forward to close the gap, striking Victim 1 chest to chest again. **FLOYD** then put his face directly in Victim 1's face, standing chest to chest, while screaming at Victim 1, including stating, "YOU HAVEN'T SHOWN ME A BADGE OR NOTHING. I HAVE A FUCKING DAUGHTER. WHO THE FUCK DO YOU THINK YOU ARE." While doing so, **FLOYD**'s spit was flying into the face and mouth of Victim 1, and **FLOYD** was jabbing Victim 1 with a finger in Victim 1's face.

17. Victim 1 remained still while **FLOYD** was bumping him chest to chest, striking him with his finger, and screaming in his face. Victim 2 continued to yell at **FLOYD** to back up, while pulling back his suit coat jacket to display and place his hand on his firearm. Victim 2's firearm was located on his right hip, directly behind where his FBI badge was clipped to his belt. Victim 2 observed **FLOYD** notice his firearm, and at that point **FLOYD** began to back up. Victim 2 yelled, "Back away!" **FLOYD** yelled back, "YOU BACK AWAY!" Victim 2 responds, "We are. We are backing away." **FLOYD** screamed, "GET OUT! GET OUT!" Victim 2 responded, "We are, we're backing up." **FLOYD** then screamed, "I HAVEN'T SEEN ANYTHING, YOU

5

HAVEN'T GIVEN ME ANYTHING. I DON'T KNOW WHO THE FUCK YOU ARE." Victim 2 responded, "Happy to show you a credential, sir. We're backing away, we're leaving." Victim 1 and Victim 2 then completed their descent down the stairs and exited the apartment building.

18. Investigators later learned that after Victim 1 and Victim 2 left the residence, **FLOYD** called 911. The call was audio recorded. **FLOYD** reported that two men had "accosted him," "followed him into his house," we're "threatening him," "throwing stuff" at him, and that "one of them had a gun." **FLOYD** also stated that as soon as he put his daughter inside, he "tried to go after them." **FLOYD** said that he referred the men to political committees because he worked in politics. **FLOYD** stated, "They were lucky I didn't have a gun on me, because I would have shot his fucking ass."

19. The Rockville City Police Department ( "RCPD") went to the apartment as a burglary response. RCPD officers arrived and knocked on the door to **FLOYD**'s apartment. The interaction was recorded on body worn cameras. Visible on the ground in front of the apartment door is the Federal Grand Jury subpoena. **FLOYD** opens the door and speaks with the RCPD officers. **FLOYD** stated two men wearing suits aggressively approached him, followed him into his apartment building, and threw papers at him. **FLOYD** told the RCPD officers that his mother-in-law called him earlier in the day to report two men stopped by her house and wanted to speak with him, and **FLOYD** showed the photograph of the business cards to RCPD officers, and the business cards were the FBI business cards of Victim 1 and Victim 2. During that conversation, **FLOYD** refers to the subpoena on the floor and states, "I don't know what that is, I'm not touching it, I'm not picking it up." **FLOYD** claimed to the RCPD officers that Victim 1 and Victim 2 "touched me," and that he felt he was being he was "pulled back," like he was being grabbed by his feet while he was going up the stairs. **FLOYD** could not elaborate further. Victim 1 and

6

Victim 2 reported that neither touched **FLOYD** as they walked up the stairs, which is corroborated by the audio documenting the footsteps and exchange between Victim 1, Victim 2, and **FLOYD** while they were going up the stairs. **FLOYD** also told the RCPD officers that after Victim 1 and Victim 2 followed him up the stairs, he slammed the door so he could go to the kitchen and "get a weapon." **FLOYD** also stated that after he dropped his daughter off inside, he went back "to go after" Victim 1 and Victim 2, that "because I was in the Marine Corps, I gotta go fight two guys," and that "I turned around to make sure they don't come back." **FLOYD** falsely stated that the agents "never introduced themselves" and that he "didn't know if they were reporters." In addition, **FLOYD** stated that when he saw Victim 2's firearm, he "almost went for it."

20. Later that evening, **FLOYD** was charged with Second Degree Assault, CR 3-203 in the District Court of Maryland for Montgomery County. **FLOYD** was arrested that night by Montgomery County Police Department officers and your Affiant. **FLOYD** was remanded to the Montgomery County Detention Center without incident, and subsequently released.

### Conclusion

21. Based on the foregoing, probable cause exists that **FLOYD** violated 18 U.S.C. § 111(a), Simple Assault on a Federal Officer. Accordingly, your Affiant requests that the Court authorize a complaint and arrest warrant for **HARRISON WILLIAM PRESCOTT FLOYD, III, a/k/a WILLIE LEWIS FLOYD, III.**

SA _____
Dennis P. McGrail, Jr.
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this  3rd  day of May, 2023.

_____
THE HONORABLE AJMEL A. QUERESHI
UNITED STATES MAGISTRATE JUDGE